ORIGINAL

1



```
1              IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
2                        SOUTHERN DIVISION

3


4    MARGUERITE CARRUBBA,
          Plaintiff,
5


6    VERSUS           CIVIL ACTION NO: 1:07cv1238

7

8    HARRISON COUNTY, MISSISSIPPI,
     by and through its Board of
     Supervisors; HARRISON COUNTY
9    SHERIFF, George Payne;
     WAYNE PAYNE; DIANE GATSON RILEY;
10   STEVE CAMPBELL; RICK GATSON;
     RYAN TEEL; KARLE STOLZE;
11   WILLIAMS PRIEST; JAMES A.
     GONDLES, JR; AMERICAN
12   CORRECTIONAL ASSOCIATION;
     JOHN AND JANE DOES 1-3; HEALTH
13   ASSURANCE, LLC AND J.L. WHITE,
          Defendants.

14

15   _____

16              DEPOSITION OF KARL STOLZE

17   _____

18        Taken at the offices of Dukes, Dukes,
          Keating & Faneca, 2909 13th Street,
          Sixth Floor, Gulfport, Mississippi, on
19        Tuesday, September 22, 2009, beginning
          at 8:36 a.m.

20

21   REPORTED BY:

22             F. DUSTY BURDINE, CSR No. 1171
                Simpson Burdine & Migues
23                Post Office Box 4134
                Biloxi, Mississippi  39535
24               dusty@SBMreporting.com
                     (228) 388-3130

25
```

EXHIBIT
tabbies
"7"

1      A.    No.

2      Q.    Okay.  And you pled guilty to one count

3   of conspiracy to deprive rights under color of

4   law; is that correct?

5      A.    Yes.

6      Q.    Tell me about that conspiracy.  When did

7   it start and end?

8      A.    Well, according to the plea agreement,

9   it started somewheres around August and ended in

10  January.

11     Q.    Okay.  Who were the co-conspirators?

12  Can you name them?

13     A.    Just -- I don't know.  Whoever was in

14  the trial, I suppose.

15     Q.    Was George Payne a part of your

16  conspiracy?

17     A.    Not that I can remember.

18     Q.    Did he ever meet with you or tell you

19  what to do?

20     A.    No.

21     Q.    Okay.  Was it a policy of the Harrison

22  County Jail that you knew about to abuse prisoners

23  for sport?

24     A.    No.

25     Q.    When did you first meet with the -- did

1    you meet with the FBI first or just DOJ

2    attorneys --

3        A.    The attorneys.

4        Q.    -- during the investigation?

5        A.    I don't remember the date.

6        Q.    How many times did you meet with them?

7        A.    Twice.

8        Q.    Did they tell you that you faced a long

9    time in jail?

10        A.    Yes.

11        Q.    Were they specific, like life or just

12    20, 30 years, or what did they actually tell you?

13        A.    They were specific.

14        Q.    What was that?

15        A.    Life.

16        Q.    So were you offered the possibility of

17    serving life in prison if you didn't agree to this

18    one count plea?

19        A.    Yes.

20        Q.    At the sentencing hearing, did the U.S.

21    Probation Department present any testimony or

22    documents regarding their recommendations on the

23    sentencing?

24        A.    Only to the judge.

25        Q.    Okay.    Was it discussed in open court in

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson                    August 14, 2009

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

Southern Division

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

GARY BRICE McBAY,              *     1:07CV1205-LG-RHW

WILLIAM DAVID SEAL,            *     1:08CV175-LG-RHW

ONLY AL-KHIDHR,               *     1:07CV1223-LG-RHW

    Plaintiffs,               *

    v.                        *

HARRISON COUNTY, MISSISSIPPI  *

BY AND THROUGH ITS BOARD OF   *

SUPERVISORS, et al.,          *     ORIGINAL

    Defendants.              *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

VIDEO-RECORDED DEPOSITION OF

MORGAN THOMPSON

August 14, 2009

9:39 a.m. - 11:06 a.m.

Hopewell, Virginia

REPORTED BY:  Kurt D. Hruneni, CCR-VA

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson                        August 14, 2009

Page 12

```
 1        approximately 9:44 p.m.  We're now off the record.

 2

 3             (Discussion off the record.)

 4

 5             THE VIDEOGRAPHER:   The time is

 6        approximately 9:47 a.m.  Please note the

 7        correction to the previous two time announcements.

 8        They were a.m., not p.m.

 9

10             MR. BRENDEL:   As far as the instruction

11        not to answer, I'm going to instruct the witness

12        not to answer with any incidents in the Ryan Teel

13        incident.

14             The witness can generally answer as to

15        events within the plea agreement, not events

16        outside the plea agreement.

17

18             BY MR. GEWIN:

19        Q     Mr. Thompson, during your employment there

20        at the Harrison County Adult Detention Center in the

21        booking department, was there, in fact, a policy to

22        abuse inmates or detainees at the jail?

23        A     No, sir.

24        Q     During your employment in the booking

25        department of the Harrison County Adult Detention
```

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson                    August 14, 2009

```
 1    Center, were you aware of any conspiracy to abuse
 2    inmates?
 3         A      That depends on what you consider a
 4    conspiracy.  I mean, Department of Justice said a
 5    conspiracy was knowing that somebody didn't write down
 6    every single little detail that happened in a report.
 7               They made it sound like a -- in court, we
 8    all got together and decided we were just going to beat
 9    up everybody that came in.  That's not the case.
10               But to their definition of knowing that
11    people left out parts of reports?  Yes.  Yes.
12         Q      During your employment at the Harrison
13    County Adult Detention Center, did you ever use
14    excessive force on any inmate or detainee who was being
15    compliant and cooperative?
16         A      No, sir.
17         Q      Was your immediate supervisor for a period
18    of time Rick Gaston?
19         A      Yes, sir.
20         Q      Did Mr. Gaston have any part of any
21    conspiracy, that you're aware of, conspiracy to abuse
22    inmates?
23         A      As far as I was involved in it, as well.
24    Yes.  He had just as much involvement as I did.  If to
25    keep down on paperwork and everything, instead of
```

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson                August 14, 2009

Page 14

```
 1    writing a 20-page report on every sentence that

 2    somebody said, you condense it down to the important

 3    parts, the times, the dates, what happened, the

 4    important things that happened, in your report, clear,

 5    concise, and file the report.

 6             You don't have to add all the frills to it.

 7    He knew we did that.

 8        Q    Okay.  Now, aside from the issue of

 9    possibly falsifying, embellishing, condensing reports,

10    however you want to say it, what I'm talking about are

11    the actual conspiracy to purposely abuse or assault

12    inmates.

13             Was Rick Gaston a part of that, if it

14    existed?

15        A    No, sir.  No, sir.

16             MR. BUCHANAN:   I'm going to object to the

17        form and calling for a legal conclusion.

18             MR. CHASE:   I'll object, as well.

19             MR. GEWIN:   What's the specific

20        objection?  I'll correct it, if I can.

21             MR. BUCHANAN:   I think, one, it's

22        leading.  And two, I think it's calling -- asking

23        him as a layperson to make legal conclusions

24        relative to law that he's not qualified to make.

25             MR. BRENDEL:   I'm going to join in the
```

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson        August 14, 2009

Page 15

```
 1        objection.

 2

 3            BY MR. GEWIN:

 4     Q      During the plea agreement here, I noticed

 5  that on page 3 it says that you -- there's a statement

 6  made that you participated in over 100 assaults against

 7  inmates, and that you observed co-conspirators

 8  participate in over 100 additional assaults against

 9  inmates at the jail.

10            Did that really happen?

11     A      Their idea of an assault was any kind of a

12  fight.  Any kind of a fight between an inmate and an

13  officer, they considered an assault.

14            When we had discussed that number, we had

15  sat down and they said, "How many times have you been

16  involved in a fight, would you say?"

17            I said, "I don't know.  Sometimes one a

18  week, sometimes one every month.  It just depends."

19            And they said, "Okay.  Well, assuming that

20  you got into one fight a week, that would add up to --

21  you know, 52 weeks a year or whatever, and how many

22  years did you work there.  Okay.  So this would add

23  up" --

24            So they're assuming that every fight that

25  we got into was an officer assault.  And the fights
```

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson                August 14, 2009

1    that I have seen and weren't involved in, the things

2    that I had responded to but were already finished by

3    the time I got there, they considered those assaults,

4    as well.

5        Q       Were the deputy --

6        A       Were there conflicts?  Yes.

7        Q       Were the deputies at that time armed with

8    sidearms or billy clubs or anything like that?

9        A       No, sir.

10       Q       Did you have an OC spray?

11       A       Yes, sir.

12       Q       Was that your only method of control --

13       A       OC spray was the only thing we had.  Yes,

14   sir.  Until we got the tasers.

15       Q       All right.  We're talking on top of each

16   other.  And that's my fault, too.  So I'll try to --

17   let me finish my question, even though you anticipate

18   it.  And I'll be patient and let you answer completely;

19   okay?

20       A       I'm sorry.

21       Q       There's, I guess, a good bit of times at

22   the jail when you're dealing with people -- this is the

23   question.  Now, if you have intoxicated people come in

24   at night, are they sometimes uncooperative or unruly?

25       A       Quite often.

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson          August 14, 2009

Page 25

```
 1    the cell until they do want to comply.

 2         Q       The earlier question I asked you, I was

 3    quoting verbatim from the DOJ attorney when he stated,

 4    "The report suggested that if inmates had been more

 5    compliant, the defendants would not have had to assault

 6    them."  The word "assault" was the DOJ's word.

 7                 Did you use a continuum of force, or did

 8    you really think it was an assault if you had to use

 9    force to restrain or control an inmate or detainee?

10         A       I don't believe it was --

11                 MR. BUCHANAN:   Object to the form.

12

13                 BY MR. GEWIN:

14         Q       You may answer.

15         A       I don't believe it was assault.  Like I

16    said, the way they came up with their numbers, anytime

17    there was any kind of physical conflict between an

18    inmate and an officer, the DOJ would call it an

19    assault.

20         Q       You've had training, I assume, when you

21    were a deputy.

22         A       Yes, sir.

23         Q       Could you kind of tell us -- I don't want

24    dates and times -- but generally what kind of training

25    you went through --
```

COPY

1

```
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                       SOUTHERN DIVISION

 3


 4    GARY BRICE McBAY,
           Plaintiff,
 5


 6    VERSUS              CIVIL ACTION NO: 1:07cv1205LG-RHW

 7

 8    HARRISON COUNTY, MISSISSIPPI,
      by and through its Board of
      Supervisors; HARRISON COUNTY
 9    SHERIFF, George Payne, in his
      official capacity; CORRECTIONS
10    OFFICER MORGAN THOMPSON,
      acting under color of state law,
11         Defendants.

12

13    _____

           DEPOSITION OF REGINA L. RHODES
14    _____

15         Taken at the offices of Brown Buchanan,
      P.A., 796 Vieux Marche' Mall, Suite 1,
16    Biloxi, Mississippi, on Thursday,
      September 17, 2009, beginning at 2:22
17    p.m.

18


19    APPEARANCES:

20         PATRICK R. BUCHANAN, ESQUIRE
           MARK V. WATTS, ESQUIRE
21         Brown Buchanan, P.A.
           796 Vieux Marche' Mall, Suite 1
22         Biloxi, Mississippi  39530
              ATTORNEYS FOR PLAINTIFF
23
           JOE C. GEWIN, ESQUIRE
24         Dukes, Dukes, Keating & Faneca, P.A.
           2909 13th Street, Sixth Floor
25         Gulfport, Mississippi  39501
              ATTORNEY FOR GEORGE PAYNE, JR.
```

1      Q.   So it was just kind of a risk you took

2   working in booking; is that right?

3      A.   It wasn't explained to me as that way.

4      Q.   How was it explained to you?

5      A.   That we were going to work in booking.

6      Q.   If Jessie Lee Williams hadn't have been

7   beat to death that night, do you think you would

8   have gone to prison at all?

9      A.   No, sir.

10      Q.   There wasn't any real conspiracy, was

11   there?

12      A.   Conspiracy as in everybody wrote false

13   reports, yes, they did.

14      Q.   But not to murder somebody?

15      A.   I don't believe there was a conspiracy

16   to murder somebody.

17      Q.   You testified at your trial that you

18   didn't record these conversations except as to

19   protect yourself if someone said something to the

20   contrary; is that right?

21      A.   Yes, sir.

22      Q.   So your testimony today is that you did

23   not tape-record these deputies, booking deputies

24   that called you except as for future reference,

25   that you were not trying to lower your own prison