Gulf Coast Office:
1403 Jackson Avenue, Suite B
Pascagoula, MS 39567
Phone: (228) 762-6656
Toll Free: (888) 246-1174
Fax: (228) 769-6312

Jackson Office:
1498 Old Fannin Rd.
Brandon, MS 39047
Phone: (601) 991-0030
Toll Free: (877) 991-0030
Fax: (601) 991-0056

# REHABILITATION, INC.

Leon Tingle, MS-LPC
Board Certified Vocational Expert

May 28, 2009

Mr. Michael Bruffey
Brown Buchanan
P.O. Box 1377
Biloxi, MS 39533-1377

Re:   Gary Brice McBay vs. Harrison County
      Case No.: 1:07cv1205-LG-RHW
      DOI: 11/6/05

## INITIAL VOCATIONAL EVALUATION

**INTRODUCTION:**

This consultant was contacted and was requested to conduct a vocational rehabilitation evaluation concerning Mr. Gary Brice McBay. The purpose of this assessment was to determine Mr. McBay's residual transferable skills, current and future employability, and vocational impairment.

We did have the opportunity to meet with Mr. Brice McBay on May 26, 2009 in Biloxi, MS. Mr. McBay was very pleasant and cooperative throughout the interview and appeared to answer my questions to the best of his ability. A follow up interview with his mother was held to confirm information concerning his activities of daily living before his injury and post injury.

A full explanation as to the purposes and scope of the vocational interview was provided to him. It was explained to Mr. McBay that he was being seen for an evaluation only and that no client, counselor relationship was being established. He was advised that this vocational rehabilitation specialist would be submitting a narrative report to the referring attorney and that this report would likely be shared with others within the context of his court case. He was given the opportunity to ask questions concerning the explanations provided. The vocational interview proceeded as scheduled.

**MEDICAL RECORDS:**

The following medical records were reviewed and considered for this evaluation:

1. Medical records of Gulfport Memorial Hospital.
2. Medical records of Dr. Ross.
3. Medical records of Coastal ENT.
4. Medical records of Dr. Steven Martin, Ph.D.

**EXHIBIT "A"**

**SOCIAL BACKGROUND:**

Mr. Brice McBay was born in Dallas, Texas on August 5, 1976. He is presently 32 years of age. Mr. McBay was raised in DeSoto, Texas and presently resides at 812 VZCR 3601 in Edgewood, Texas 75117. He has lived at the present address since December 2003. Mr. McBay reported that he is five feet, five inches in height and presently weighs 110 pounds. Mr. McBay is right hand dominant and personally appeared to be his stated age. He possesses a standard Texas driver's license and has access to a dependable automobile. Mr. McBay does not have any restrictions on his license and indicated the only problem he has with driving is that he is afraid of getting lost or being involved in a traffic accident. In addition, Mr. McBay does not have any past or present legal problems, including past felony convictions, which could adversely affect his residual employability. According to Mr. McBay's mother, the original accusations surrounding his arrest have been dropped. McBay is currently single.

**EDUCATIONAL BACKGROUND:**

Mr. McBay graduated from DeSoto High School in DeSoto, Texas in 1995. He described himself as an average student with his favorite subject being math and his least favorite subject being English. Mr. McBay did receive some vocational training in welding while in high school and did play baseball in the ninth grade as an extra-curricular activity. It should be noted that Mr. McBay was diagnosed with a learning disability while in elementary school.

**VOCATIONAL/SPECIAL TRAINING:**

Mr. McBay did receive training as an insurance adjuster. Mr. McBay took an insurance adjusting course for approximately two weeks to become a certified state licensed adjuster in the state of Texas. He also has taken other courses through Farmer's Insurance, Allstate Insurance, and Pilot Insurance. Mr. McBay is required to take 30 hours of training every two years to remain licensed.

**COLLEGE BACKGROUND:**

Mr. McBay has no college training.

**MILITARY SERVICE:**

Mr. McBay has no military experience.

**VOCATIONAL HISTORY:**

Mr. McBay began working in 1996 as a masker for Golden Manufacturing in Garland, Texas. According to Mr. McBay, he was required to tape sheet metal to prevent over spraying of paint on computer boxes. Mr. McBay held this job for three years until he found another job that paid better wages. From 1999 until 2000, Mr. McBay worked for A1 Furniture as a furniture mover/warehouseman. Mr. McBay was required to move furniture and arrange furniture in a warehouse, as well as deliver furniture to the homes of customers.

In 2002, Mr. McBay completed his adjuster training and began working for Eberl's Claim Service in Texas as a Class "C" adjuster. According to Mr. McBay, he was working with his father as a mold claims inspector. In 2004, Mr. McBay became employed with Pilot Insurance where he worked as an independent adjuster with his father. According to Mr. McBay, he was on the MS Gulf Coast working flood claims after Katrina performing all tasks involved in filing claims for the victims of Katrina. After the incident on

November 6, 2005 and his examination and treatment at Gulfport Memorial Hospital, he advised his employer that he was in an accident and would not be able to work for approximately two weeks. According to Mr. McBay, it took him this long for facial cuts and abrasions to heal and the swelling to disappear on his face, neck and head.

Since his family had been in this area with him, he suggested that his sister ride with him for safety reasons and to perform the computer/data entry for the claims. Mr. McBay stated that he was having difficulty focusing and staying on tasks, but was able to perform simple and repetitive activities such as measuring rooms, writing down room contents and answering simple questions from home owners. Once the information was gathered, his father and sister would enter the information and complete the estimate.

Mr. McBay reported that they continued to work the claims in the same fashion until January 18, 2006, when he decided that something was wrong. He was unable to communicate with the home owners, because he was unable to answer questions and speak as he did before his injury. Mr. McBay said the family returned to Texas, including his father, where they became full-time caregivers for him. According to Mr. McBay and his mother, her son has not been able to work except with his farther in "sheltered" employment. It is my understanding that his mother and father pays all his bills which include the following: 1) house note with insurance; 2) telephone and cable; 3) utilities; 4) car and truck note with insurance; 5) cell phone; 6) fuel experience; 7) groceries which equals to approximately $2400.00 per month.

## PHYSICAL ABILITIES/LIMITATIONS AS DESCRIBED BY MR. GARY BRICE MCBAY:

Mr. McBay reported his most disabling condition stems from his post-concussion syndrome and post-traumatic stress disorder. Mr. McBay indicated that he does not like to leave his home without his family and does not like to socialize or be in groups. Mr. McBay last saw a Dr. Martin in January 2009 and will have a follow up appointment in June or July 2009. Mr. McBay is receiving counseling and follow up care as needed. Mr. McBay does not take any prescription medications or over the counter medications for his medical conditions because he is fearful of becoming addicted. When asked about non-injury related medical conditions, Mr. McBay indicated that he has hypoglycemia.

## REVIEW OF THE MEDICAL RECORDS:

### Gulfport Memorial Hospital

**November 7, 2005 and November 8, 2005** – Notes from Gulfport Memorial Hospital ER on these dates describe facial bruising, black eye, and nasal fracture. A drug toxicology screen from November 8, 2005 was negative. The CT scan performed on November 7, 2005 showed a large left temporoparietal scalp hematoma, along with mucosal thickening of the ethmoid air cells bilaterally. The CT of his orbitis levels that was done on November 7, 2005 showed a nasal bone fracture, mucosal thickening of the ethmoid and frontal sinuses right, greater than left due to apparent trauma and bleeding, as well as chronic nasal septum deviation.

### Dr. Steven K. Martin, Ph.D.

**December 3, 2007** – Dr. Martin performed a neuropsychological evaluation of Mr. McBay. He was apparently complaining of cognitive symptoms to include short term memory problems, reduced recall of conversations, difficulty recalling job tasks, and struggles with word finding, concentration, processing speed issues, as well as multi-tasking problems. Dr. Martin noted that Mr. McBay's current physical

symptoms do include chronic low-grade fever, lethargy, decreased energy, as well as bilateral hand numbness, left worse than right. Mr. McBay noted his behavioral status to Dr. Martin to include being more irritable frustrated and also reported nightmares.

Dr. Martin performed a battery of tests and related the following diagnosis: Concussion, organic personality syndrome, post-concussion syndrome, post-traumatic stress disorder, and major depression single episode moderate. Dr. Martin noted in his report that from a diagnosis standpoint, the results indicated a frontal lobe dysfunction consistent with residual effects from a concussion sustained in the reported assault. Dr. Martin indicated that due to the time frame that had elapsed from the injury, he was of the opinion that Mr. McBay's symptoms were permanent in nature. Dr. Martin noted that Mr. McBay has been unable to work as an independent insurance adjuster due to the negative manner posed by his cognitive and emotional and behavioral affects from the injury.

## CLINICAL INTERVIEW

This counselor met with Mr. McBay's mother regarding his injuries and subsequent emotional difficulties. She stated that her son was a different person now. He was always a "fun loving" good natured person willing to help anyone in need. He became extremely angry and easily agitated with episodes of extreme depression. He would drink alcohol excessively consuming from eighteen (18) to thirty (30) cans of beer per day. She found him on the floor of the bedroom on one occasion, where he attempted to hang himself with a leather belt. She found the belt handing from the ceiling with her son lying on the floor.

Mr. McBay was reluctant to discuss his attempt at suicide with this counselor, but stated that the depression and hopelessness became too much for him to handle. He was always an overachiever because of his small stature and learning disability. He always wanted to prove to everybody that he could be independent and have all the things he never had as a child. He stated that he had almost reached that goal when he became a certified and licensed adjuster. He knew that working hard and providing a good product would always allow him to find work as an adjuster. The depression, anger, and despair came when he realized the injuries he sustained took all his dreams and livelihood away from him and his family.

Mr. McBay stated that he has been able to work with his father performing routine tasks, but his father completes the written assignments. He does not like to be around people or in a group of people. Also, he does not like to be alone in a vehicle, because he becomes disoriented and lost easily. This prevents him from travelling to far from his home without an attendant or family member. He contines therapy which will be an ongoing process.

## VOCATIONAL ANALYSIS:

An analysis of Mr. McBay's work as an insurance adjuster has been performed for the purpose of identifying the physical demands, skill level, worker aptitudes, temperaments, and interest areas demonstrated. This analysis is based upon my review of the following research documents:

- <u>Dictionary of Occupational Titles</u>, U.S. Department of Labor, 1991 Edition
- <u>Selected Characteristics of Occupations</u>, as defined in the <u>Revised Dictionary of Occupational Titles</u>, 1993 Edition
- <u>Classification of Jobs</u>, 2000 Edition

RE: Gary Brice McBay
Date: May 28, 2009
Page 5

At the time of the injury, Mr. McBay was working as an insurance adjuster for Pilot.

The position of **insurance adjuster** is a light, skilled job. The following GED levels are utilized:

- Reasoning – above average
- Math – average
- Language – above average

The following aptitudes are utilized:

- Intelligence – above average
- Verbal – above average
- Numerical – average
- Spatial Perception – average
- Form Perception – average
- Clerical Perception – above average

The following vocational temperaments are demonstrated:

- Influencing people
- Making judgments
- Dealing with people

Skills and abilities that can be required include, "Applying logic to identify problems; knowing regulations and interpreting information applicable to contract writing and claims settlement; computing costs and working up costs estimates; reading and understanding detail, technical, and legal information, keeping accurate records, and writing detailed reports, and speaking clearly and convincingly."

## VOCATIONAL TESTING:

Vocational testing was not performed as Mr. McBay was given a battery of tests during his neuropsychological evaluation performed by Dr. Steven Martin, Neuro-Psychologist.

## IMPRESSIONS:

Mr. McBay was severely beaten at the Harrison County Jail on November 6, 2005. Mr. McBay was employed with Pilot as an independent insurance adjuster and had been working there for approximately five years at the time of his injuries. A review of the medical records show, that as a result of his injuries, Mr. McBay has been diagnosed with a frontal lobe dysfunction, as well as a concussion, organic personality syndrome, post-concussion syndrome, post-traumatic stress disorder, and major depression single episode moderate.

Mr. McBay is a 32-year-old male, who currently resides in Edgewood, Texas. He possesses a valid Texas driver's license. Mr. McBay has a high school diploma and has received training and certification as a state licensed adjuster. His work history has consisted of unskilled to skilled jobs such as masker, furniture mover, and adjuster. Dr. Steven Martin noted in his neuropsychological report that Mr. McBay suffered from difficulty with attention, processing speed, decision making, visual memory and recall, as well as mood and personality changes, which have not allowed him to return to work as an independent adjuster.

Based on the evaluation of Mr. McBay's age, education, past work history, and cognitive, emotional, and behavioral deficits, it is my opinion that he will not be able to function as an independent adjustor. However, he will be able to return to work in some repetitive unskilled and semi-skilled jobs.

**REHAB PLAN:**

Mr. McBay would benefit from vocational rehabilitation services. Some of the services would include vocational counseling and guidance, job coaching, job interviewing skills training, and job placement services. These services should be under the guidance and duration of a certified rehabilitation counselor.

**ACCESS TO LABOR MARKET:**

Pre-accident:

Mr. McBay demonstrated the ability to work in occupations ranging from unskilled to skilled and light to very heavy in nature, as these terms are defined by the U.S. Department of Labor.

Post-accident:

Based on the combination of cognitive, emotional, and behavioral symptoms, Mr. McBay would have difficulty returning to positions where he is required to influence people, make judgments, or deal with the public. These vocational temperaments were demonstrated and were needed in his job as an insurance adjuster.

Using this information and our review of the National Labor Market Statistics, it appears that Mr. McBay has suffered a 23 percent loss of access to jobs in the competitive labor market. This is due to his cognitive limitation stated above.

**PLACEABILITY:**

Mr. McBay should be able to locate entry-level employment at this time. However, transportation is still an issue. A labor market survey was conducted in his current geographic area of Edgewood, Texas. The following jobs are ones that this vocational rehabilitation specialist believes he may be able to perform with accommodations and job coaching services.

| Job Title | Wages |
| --- | --- |
| Order Puller | $9.25 per hour |
| Forklift Operator | $10.00 per hour |
| Sanitation Utility | $9.00 per hour |
| Packer | $8.25 per hour |
| Maintenance Store Room Operator | $9.82 per hour |
| Assembler | $8.00 per hour |
| Inventory Clerk | $8.50 per hour |

**EARNINGS CAPACITY:**

Pre-accident:

Mr. McBay's Social Security earnings records indicate that he has been working full time since 1996. His earlier jobs were unskilled, labor intensive jobs earning low wages. Since he completed his training in 2002, his wages have increased dramatically. The last four years of his wages are as follows:

2002 Earnings - $71,008
2003 Earnings - $58,994
2004 Earnings - $59,479
2005 Earnings - $120,426

The average wage for the four years prior to his 2005 injury, including the year of his injury, is $77,476.75.

Post-accident:

It is my opinion that Mr. McBay is capable of earning wages between $8.00 and $10.00 per hour in the types of jobs outlined in this report. The average annual wage for the jobs listed above is $18,678.40.

Based on this information, Mr. McBay has suffered a 76 percent loss of wages.

**LABOR FORCE PARTICIPATION:**

It is my opinion that Mr. McBay is a good candidate to benefit from vocational rehabilitation services. Based upon the evaluation of his age, education, past work history, and his cognitive, emotional, behavioral, and physical symptoms, it is my opinion that he will need assistance to locate and sustain employment into the future.

It is my opinion that Mr. McBay has suffered a 50 percent total vocational loss.

I reserve the right to supplement the opinions expressed in this report should additional information become available. Because of the type of injuries he has sustained, a life care plan may need to be conducted.

Mr. Bruffey, thank you for allowing us the opportunity to work with you on this case. If you have any questions or need clarifications regarding this report, please feel free to contact me at (228) 762-6656.

Sincerely,

Leon Tingle, MS-LPC
Board Certified Vocational Expert

LT/tp/jy

# Curriculum Vitae

**KATHY JACKSON SMITH, MS, CRC, CLCP**

REHABILITATION, INC
1498 Old Fannin Road
Brandon, MS 39047-8724
(601) 991-0030

**Education:**

Mississippi State University *(December 1999)*
Master of Science in Vocational Rehabilitation Counseling

Delta State University *(December 1996)*
Bachelor of Arts in Psychology

**Professional Certifications, Memberships, and Qualifications:**

Certified Rehabilitation Counselor, Commission on Rehabilitation Counselor Certification, *Schaumburg, Illinois*
Certified Life Care Planner, Commission on Health Care Certification, *Midlothian, Virginia*
International Association of Rehabilitation Professionals *(National)*
International Association of Rehabilitation Professionals *(Mississippi Chapter)*
International Academy of Life Care Planners
Mississippi State University Community Advisory Board Member *(Department of Vocational Rehabilitation Counseling)*

**Work Experience:**

Rehabilitation Incorporated *(April 2000-present)*
Brandon, Mississippi
Title: Vocational Counselor, Life Care Planner
Duties: Vocational evaluations of persons with disabilities pertaining to on the job injury and liability, which assist in establishing employability and/or wage earning capacity; Job placement, including assistance to individuals with resume and application process; Life care plans including evaluation of individuals, research and medical cost projections; Research regarding labor market, including surveys and on site job analysis; Expert testimony.

Concentra Managed Care *(August 1999-April 2000)*
Ridgeland, Mississippi
Title: Vocational Case Manager
Duties: Vocational evaluations, various job placement activities, labor market surveys, and case management activities.

Iglesia Bautista *(May 1999-July 1999)*
Tipitapa, Nicaragua
Title: Volunteer Youth Program Coordinator
Duties: Coordinated and implemented youth violence prevention program.


EXHIBIT "G"

## RESOURCES

1. Bird, Elliott (Neuropsychologist Richard Fulbright, PhD). Telephone interview.
2. Robinson, Steve (Center for Neuro Skills). Telephone interview.
3. American Academy of Family Physicians (http://www.aafp.org/afp/20000401/2121.html).
4. Lordice (Office of Dr. Antonio Roman). Telephone interview.
5. Drug Store.com. The website is www.drugstore.com.

# KATHY JACKSON SMITH, M.S., C.R.C., C.L.C.P

## Testimony Provided on Cases for Preceding Five Years by Trial and Deposition

Brandon Culp v. Phillip Gerad Johnson and Schneider National Carriers, Inc; In the District Court of Jefferson County, Texas; Civil Action No. B178394

Odom v. Kemper Neshoba Correctional Facility-MWCC

Evans v. Outokumpu Copper Group- MWCC

Randall v. Singing River Electric Power Association-MWCC

Chamblee v. Choctaw Enterprises-MWCC

Cone v. Rebel Sound Systems, Inc.; Jackson County Circuit Court
Cause No. 2007-00,023

Tew v. Siemens Power Transmission, Liberty Insurance Corporation- MWCC

Reynolds v. G.B. "Boots" Smith Trucking, Jackson County Circuit Court
Civil Action No. CI-2004-00095

Dan M. McDaniel v. Elizabeth McDaniel, Madison County Civil Action No. 2007-368-B

Savell v. Choctaw Enterprises-MWCC

Bozeman v. Choctaw Enterprises-MWCC

Tidwell v. Mississippi Department of Public Safety-MWCC

Gregory v. Choctaw Enterprises (Golden Moon Casino) - MWCC

Charles Myers v. Polk Meat Products- MWCC

Mary K. Campbell v. North Mississippi State Hospital-MWCC

Randy Scott v. City of Goodman; Civil Action No.: 2003-147

Randy Scott v. City of Goodman; Daubert Hearing

Karen Smith v. Mississippi State Department of Mental Health- MWCC

Willie Breitling v. T&L Transportation Services, Inc. Wilson County Criminal Court Docket No. 01-0534 (Tennessee)

Ann Culpepper v. State Veterans Affairs Board- MWCC