# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **GARY BRICE MCBAY** | § | **PLAINTIFF** |
| | § | |
| **VERSUS** | § | **CAUSE NO. 1:07cv1205-LG-RHW** |
| | § | |
| **HARRISON COUNTY, MISSISSIPPI, BY** | § | |
| **AND THROUGH ITS BOARD OF** | § | |
| **SUPERVISORS; HARRISON COUNTY** | § | |
| **SHERIFF GEORGE PAYNE, IN HIS** | § | |
| **OFFICIAL CAPACITY; and** | § | |
| **CORRECTIONS OFFICER MORGAN** | § | |
| **THOMPSON, ACTING UNDER COLOR** | § | |
| **OF STATE LAW** | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART PAYNE'S MOTION FOR SUMMARY
## JUDGMENT AND DENYING PAYNE'S SECOND MOTION TO STRIKE

BEFORE THE COURT are Defendant Harrison County Sheriff George Payne's Motion

for Summary Judgment [300] and Motion to Strike Plaintiff's Evidentiary Exhibits Submitted in

Support of Response to Defendant's Motion for Summary Judgment [336]. Plaintiff Gary Brice

McBay brought this action for the alleged abuse he received while in the custody of the Harrison

County Adult Detention Center ("HCADC"). Payne argues (1) there is no evidence of a

constitutional violation (2) nor a policy, (3) which was the moving force behind the violation; (4)

McBay fails to state a Section 1985 claim; (5) there was no conspiracy involving state action, (6)

nor a deprivation of civil rights in furtherance of the conspiracy; (7) McBay has not lost a civil

action; and (8) punitive damages are not available on the Section 1983 claims. Payne further

argues that McBay's Exhibits B, E, J, L-N, and S-T are inadmissible on summary judgment

because they (9) are not competent, (10) lack trustworthiness, (11) are hearsay, (12) irrelevant,

(13) unfairly prejudicial, (14) character evidence, (15) subsequent remedial measures, (16) backdoor expert opinions, and (17) not authenticated. Summary judgment is granted as to the denial of medical care claim and the Section 1983 conspiracy to deny access to courts claim. The Section 1985 claims are dismissed without prejudice. The remainder of the motions are denied.

## FACTS AND PROCEDURAL HISTORY

The Court incorporates by reference the facts set forth in its Memorandum Opinion and Order Granting in Part and Denying in Part Thompson's Motions for Summary Judgment, Granting Motion to Dismiss, and Denying as Moot Thompson's Second Motion to Strike, filed contemporaneously with the instant Order.

## DISCUSSION

### MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . .

an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

I.    SECTION 1983

Under Section 1983, McBay brings excessive force, denial of medical care, conspiracy to abuse, and conspiracy to cover up abuse claims against Payne, in his official capacity.

A claim against the sheriff in his official capacity is treated as a claim against the county, and sheriffs in Mississippi are the final policymakers with respect to all law enforcement decisions made within their counties. *Brooks v. George County, Mississippi*, 84 F.3d 157, 165 (5th Cir. 1996). A municipality may be held liable under 42 U.S.C. 1983 when its official policies or customs violate the Constitution. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). The policy or custom must cause the constitutional tort. *Id.* at 691. "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* Thus, to prove Payne is liable, in his official capacity, under Section 1983, McBay must prove (1) the existence of a policymaker, and (2) an official policy or custom, (3) which is the moving force behind a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

A.    EXCESSIVE FORCE

Payne first challenges the excessive force claim arguing there was no excessive force. In the alternative, Payne argues, that there was neither a policy of excessive force that was a moving force behind the violation.

1.    CONSTITUTIONAL VIOLATION

The Due Process Clause, applicable to the States via the Fourteenth Amendment, protects

a pretrial detainee from excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.11 (1989). The standard for analyzing an excessive force claim under the Fourteenth Amendment is the same as the Eighth Amendment standard. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). This right is violated if there is (1) more than a de minimis injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). To determine whether the force was excessive, the inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). "Often, of course, there will be no evidence of the detention facility official's subjective intent, and the trier of fact must base its determination on objective factors suggestive of intent." *Id.* Some of these factors would be (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of the forceful response. *Id.* at 1447 n.29.

Payne argues there was no excessive force because (1) Thompson was acting in self defense, (2) his response was not excessive, (3) and Thompson's punches did not result in any injury to McBay. Payne argues that Thompson had a right to punch McBay in the shower because McBay punched him first. The Court need not decide if this is true, because Payne does not explain why the alleged force used prior to the shower was justified. The video indicates that Thompson took McBay to the ground at least once, if not twice, before entering the shower. Thompson testified that all McBay was doing prior to the shower was insulting him and there

was no need to use force. Further, Thompson testified that the reason he struck McBay twice in the shower was because when Thompson looked outside the shower door to get the inmate uniform, McBay sucker punched him in the head. The video disputes this account. It reveals Thompson step in the door frame of the shower to look for the uniform, but it does not reveal McBay strike him in the head, or otherwise reveal McBay at all. Thus there is evidence from which a reasonable jury could conclude that McBay was not struck by Thompson in self defense. Payne has failed to demonstrate there is a lack of genuine issue of fact as to whether Thompson used force that was excessive to the need.

As to McBay's injuries, there is a genuine issue of fact as to whether he received injuries from Thompson. Randazzo testified that he only hit McBay once somewhere above the shoulders. Randazzo could not recall McBay's nose bleeding. He did not even recall the scratch to McBay's nose. There is evidence that indicates McBay's nose was bleeding after the incident with Thompson in the shower. For example, Thompson testified that the use of force resulted in McBay's facial swelling and bleeding from the nose. The video indicates that immediately after the episode in the shower, a trusty was called to mop the shower room, which he did for several minutes and then followed the mopping with a spray bottle. Regina Rhodes testified that Thompson admitted to her that he caused the x shaped wound on the top left of McBay's head. Thompson told her it was from contacting the shower grate. She testified the wound was consistent with her observations on other inmates who "were either thrown to the floor or when they were on the floor, if they were kicked into the grate." (Rhodes's Dep. at 44). Thompson also admitted that he gave McBay a black eye. The jail records also indicate there is a cut on the back of McBay's head. None of Randazzo's testimony indicates he used any force to the back

of McBay's head.  McBay testified that Thompson beat him all over his head.  The medical records reveal multiple bruises on McBay's head, whereas Randazzo testified he only hit McBay once.  His doctor opined that McBay suffered a concussion, loss of cognitive function, and post traumatic stress disorder as a result of the multiple head injuries.  This is evidence from which a reasonable jury could find that McBay did suffer injuries from Thompson.

In rebuttal, Payne responds that his evidence that McBay suffered no injury is more credible.  Thus, Payne concedes that there is a dispute of fact, and only a credibility issue to be decided.

### 2.    POLICY OR CUSTOM

Having found a question of fact regarding whether there was excessive force, the Court now considers whether there was an excessive force policy.  The Court addressed this issue in its contemporaneous order regarding Harrison County's Motion for Summary Judgment.  For the reasons stated therein, the Court finds a genuine issue of fact as to whether there was a policy or custom of excessive force of which Payne actually knew or should have known and yet was deliberately indifferent.

### 3.    MOVING FORCE

The Court next considers whether there is evidence that the alleged policy of excessive force was the moving force behind the alleged excessive force against McBay.  After due consideration of the above evidence, the Court must answer this question in the affirmative.  Additionally, Thompson admitted that he knew of and was a part of this custom of abuse.  There is significant evidence that the officers at the jail believed it was humorous to wrongfully assault inmates.  There is evidence that one month prior to the subject incident, he posted pictures

evidencing his assault on another inmate all over the booking room.  Instead of a reprimand, Thompson and the other officers were allegedly further instructed on how to abuse inmates.

## B.    FAILURE TO TRAIN AND SUPERVISE

Although the First Amended Complaint alleges a failure of the Sheriff, in his official capacity, to properly train and supervise, this allegation is just a part of the excessive force claim and not alleged as a separate claim.  This issue is moot.

## C.    DENIAL OF MEDICAL CARE

McBay alleges that after the excessive force he was denied medical care for his obvious resulting injuries.  Payne argues this claim should be dismissed because the jail nurse saw McBay after the shower incident, attended to his bruises and bloody nose, and McBay denied that he needed further attention.  Payne maintains that this evidence shows that she did not subjectively know of and disregard a substantial risk to McBay's health or safety.  McBay does not respond to this argument.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'"  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference . . . occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The "official's knowledge of a substantial risk of harm may be inferred if the risk was obvious."  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).  In addition, Section 1983 requires a showing of proximate causation, which is evaluated under the common law standard. *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005).

It is undisputed that shortly after the shower incident, a jail nurse was called to check on

McBay.  There is evidence that the nurse did not note all of his injuries.  For example, she noted

he had an abrasion to the back of his head, a swollen, bruised left eye, and a bloody nose.

"[Zero] other injuries noted at present time. . . .  [Inmate] stated when asked if his jaw was

hurting [inmate] stated, 'No my jaw does not hurt.'"  (Cabana Aff. Ex. 1 at 4).  Inmate:

> denies any other injuries.  [Inmate] stated 'I am ok.'  [Inmate] is AAOx3,
> PERRLA.  [Inmate] voices 0 other concerns at this time.  [Inmate] can move his
> jaw up and down, side to side without difficulty.  Will place on Dr. call next
> available visit.  [Inmate] was intoxicated and unable to sign consents at present
> time.  Will follow up PRN.

(Cabana Aff. Ex. 2 at 1).  He was not seen again by medical personnel at the jail.  When he went

to the hospital the next day, the hospital records noted abrasions to his face and elbow, two

blackened eyes, pain to his face and elbow, general body pain, multiple bruises to his face, chest,

knees, and arms, nasal fracture, and head trauma.  He was later diagnosed with a concussion and

loss of cognitive functions.

   The most that can be said of this evidence is that the nurse was negligent.  While it may

be possible that she perceived but disregarded a substantial risk to McBay's health or safety,

there is no evidence upon which a jury could draw the conclusion that she did.  There is further

no evidence that the jail deputies were deliberately indifferent to McBay's medical needs.  Indeed

those deputies present witnessed the nurse go in to the shower to examine McBay.  Even if she

did not examine or treat him properly, there is no evidence that the deputies knew about it.

Therefore, the Court finds that Payne is entitled to a dismissal of the denial of medical care

claim.

### D.    CONSPIRACY

McBay asserts Section 1983 claims against Payne for the alleged conspiracies to use

excessive force and to cover it up.  Payne challenges the first conspiracy claim, arguing there was

no agreement to assault McBay and he did not suffer a deprivation of a constitutional right as a

result.  McBay responds that there is evidence of these conspiracies and of the resulting excessive

force.

"A conspiracy may be charged under section 1983 as the legal mechanism through which

to impose liability on all of the defendants without regard to who committed the particular act."

*Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).  To prove a conspiracy claim under Section

1983, the plaintiff must prove (1) a conspiracy involving state action and (2) a deprivation of

civil rights in furtherance of the conspiracy by a party to the conspiracy.  *Pfannistel v. City of

Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).

As discussed in this and in contemporaneous orders, Thompson and others admitted there

was a conspiracy under color of law to use excessive force upon inmates in the booking room.

This conspiracy began in 2004 and ended in 2006.  As discussed previously and in the

contemporaneous orders, there is evidence that McBay was subjected to excessive force as a

result of this conspiracy.

Payne argues the second conspiracy claim fails because McBay is presently bringing a

civil action for the alleged excessive force.  McBay responds that there is a genuine issue of

material fact as to whether the conspiracy to cover up existed and whether there was a cover up

of the alleged violations.

This particular conspiracy claim alleges a conspiracy to deny McBay's access to courts.

To pursue this claim, he must prove that the conspiracy "hindered his efforts to pursue a legal

claim."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  It is not clear if he is pleading a "forward-

looking" or "backward-looking" access claim. A forward looking access claim is a case where the "litigating opportunity yet to be gained" is being blocked by the defendants. *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). "The object . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413. McBay cannot prove a forward-looking denial of access, because he has in fact filed the excessive force claim.

A backward-looking claim is about "an opportunity already lost." *Id.* at 414-15. It looks "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414. For a "backward-looking access claim," he must prove (1) an underlying cause of action, (2) the litigation of which was frustrated by official acts, (3) which resulted in a lost remedy. *Id.* at 415-16. As for the third element, McBay:

> must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Id.* at 415. For example, the official deception "may allegedly have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Id.* at 414.

On the record as it presently stands, the Court finds no evidence that McBay has lost a remedy for his excessive force claim. There has yet been no loss nor "inadequate settlement." The Court is provided with no evidence of a lost opportunity to sue Thompson or others, or the lost opportunity to seek some particular relief. Therefore, Payne is entitled to dismissal of the

Section 1983 conspiracy to cover up abuse.

II.    SECTION 1985

Payne argues that McBay has failed to state a claim under Section 1985, because the First Amended Complaint does not describe any of the conduct proscribed by that statute. McBay responds that there is a genuine issue of fact as to whether there was a conspiracy to use excessive force and to cover up the excessive force.

To survive a Rule 12(b)(6) motion to dismiss, McBay must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). This does "not require heightened fact pleading of specifics." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555-56. The Court must view the facts in favor of the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Bell Atlantic*, 550 U.S. at 555) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Section 1985 provides a cause of action for several types of conspiracies, under subsections one through three. 42 U.S.C. § 1985. McBay does not expressly cite the portion or portions of Section 1985 upon which he relies. Payne first argues that the First Amended Complaint fails to state a Section 1985(1) claim, because it does not allege he conspired to interfere with official duties of federal officers. Subsection one provides:

> If two or more persons in any State . . . conspire to prevent, *by force, intimidation, or threat*, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; *or to induce by like means* any officer of the United States to leave any State, district or place, where his duties as an officer are required to be performed, *or to injure him in his person or property* on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties
> . . .
> the party so injured . . . may have an action for the recovery of damages, occasioned by such injury . . . against any one or more of the conspirators.

42 U.S.C. § 1985(1), (3) (emphasis added).

The First Amended Complaint alleges, that Thompson and others conspired to conceal the alleged abuse of McBay. "That after a complaint was made concerning these gross abuses and injuries . . . McBay suffered, high ranking officials of the Harrison County Sheriff's Department, with final making authority, assisted by . . . Thompson, engaged in acts to falsely deny and/or cover-up what had occurred and further threatened the injured Plaintiff with retaliatory actions." (1st Am. Compl. at 2 (¶4)). Specifically, it is alleged that certain conspirators threatened McBay with false felony charges if he continued in his claim. Thompson is claimed to have "prepared a false report of the incident and circumstances surrounding the beating." *Id.* at 12 (¶34). There is no allegation, however, that this included a conspiracy to use force, intimidation, or threat of a federal official, or to injure a federal officer's person or property. Therefore, the First Amended Complaint does not state a claim under subsection one.

Subsection two prohibits conspiracies to interfere with federal and state court proceedings. 42 U.S.C. § 1985(2). It specifically prohibits conspiracies between:

> two or more persons in any State . . . to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or

from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . .; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State . . . with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2). The First Amended Complaint does not allege that McBay was a party or witness in a federal court proceeding. There is no allegation that he was injured for having testified or attended a federal court proceeding. As for the state court proceeding portion of this statute, it requires a showing of racial or other class-based animus. *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986). For the reasons discussed below, McBay does not allege any racial or class-based animus behind the conspiracy. Further, he does not allege that he was injured while trying to protect the equal rights of others. Therefore the First Amended Complaint does not state a claim under subsection two.

Finally, subsection three prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws," or to prevent another from voting or advocating in a federal election. 42 U.S.C. § 1985(3). Again, a conspiracy to deprive another of the equal protection of the laws, requires a showing that "some racial, or class-based discriminatory animus lay behind the conspiracy." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). "It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' . . . its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271-72 (1993). Some Fifth Circuit cases only accept racial claims under this provision. *Horaist*,

255 F.3d at 271 n.12; *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 n.2 (5th Cir. 1998); *Deubert v. Gulf Fed. Savs. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). *Deubert* held, "*it is well-established* in this circuit that the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Id.* (emphasis added). However, *Deubert* did not address its contemporary cases which held otherwise. For example, one such case held, "*It is well-settled* law that discriminatory animus behind an alleged violation of section 1985(3) must be racially based or in some other way class-based." *Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987) (emphasis added). These other Fifth Circuit cases require a class that is based on an "inherited or immutable characteristic," political belief, or association. *Sullivan v. County of Hunt*, 106 Fed. Appx. 215, 220 (5th Cir. 2004); *Hamill v. Wright*, 870 F.2d 1032, 1037-38 (5th Cir. 1989); *McLean v. Internat'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987) (scapegoat employees not protected class, because it "does not possess discrete, insular and immutable characteristics similar to race, national origin or sex"); *Galloway*, 817 F.2d at 1159; *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1066 (5th Cir. 1980). Of course, none of these cases found the allegations of non-racial animus at issue to be sufficient.

Under either view, the First Amended Complaint here misses the mark. The only characteristic McBay alleges he and the other alleged victims share is that they are "accused and arrested citizen[s] temporarily incarcerated as a 'pre-trial detainee[s],'" "other inmates," and "other detainees held in Booking." (1st Am. Compl. at 1,2, 35 (¶¶1, 5)). His allegations, taken as true, do not state a conspiracy motivated by race, another inherited or immutable characteristic, political belief, or association. *Accord*, *Burkett v. City of El Paso*, 513 F. Supp. 2d

800, 822 (W.D. Tex. 2007) ("those arrested by the El Paso Police Department" not sufficient to allege racial or class-based animus under Section 1985(2)).

Further, there is no allegation that the conspiracy was to prevent another from voting or advocating in a federal election. Therefore the Complaint fails to state a claim under Section 1985(3). The Section 1985 claims are dismissed without prejudice.

### III.  PUNITIVE DAMAGES

Payne seeks dismissal of McBay's punitive damages claim. For the reasons discussed in the contemporaneous order on Harrison County's motion for summary judgment, this issue is moot. McBay does not seek punitive damages against the County or the Sheriff in his official capacity.

## MOTION TO STRIKE

Payne argues that McBay's Exhibits B, E, J, L-N, and S-T are inadmissible on summary judgment.

### I.  EXHIBIT B

McBay's Exhibit B is excerpts from Rhodes's deposition. Payne argues that portions of this should not be considered because they are irrelevant and are character evidence.

First, Payne does not want the Court to consider Rhodes's testimony interpreting the video, arguing that it is not based on her personal knowledge. The Court did not rely on her interpretation of the video. This argument is moot.

Second, Payne argues that Rhodes's deposition testimony "is irrelevant character evidence because Plaintiff has put forward no evidence that Rhodes was present or had personal knowledge of any of the events that occurred on November 6, 2005." (Payne's 2d Mot. Strike at

19).  Payne's Responses to Requests for Admissions and the video show that she was present and had personal knowledge of the events.  She likewise testified that her testimony concerning the x shaped wound was based on her "personal experience and knowledge."  (Rhodes's Dep. at 44).

## II.    EXHIBIT E

McBay's Exhibit E is his booking photograph.  Payne objects "because it has not been properly authenticated." (Payne's 2d Mot. to Strike at 20).

Exhibit E appears to be an enlarged copy of the booking photograph that Payne presented to the Court on summary judgment.  He concedes that these are the same photograph.  He therefore, concedes the authenticity of the photograph.

On rebuttal, Payne argues that he has not waived any objection to McBay's copy by presenting his own copy first.  Not only did Payne waive the objection, he has since conceded that the objection has no merit.  He also argues that there is evidence that Thompson did not cause these injuries.  That the injuries are disputed is no reason to strike a photograph, of which Payne now admits the authenticity.

## III.    EXHIBIT J

Exhibit J is a side photograph of McBay.  The Court did not rely on this photograph.

## III.    EXHIBIT L

McBay's Exhibit L are the Plea Agreements and two Judgments in the criminal cases in which several booking room deputies admitted to excessive force.

First, Payne argues that Exhibit L did not include Thompson and Wills's Plea Agreements.  On the contrary, Thompson's plea agreement is found at Exhibit L, pages 15-22.  Wills's Plea Agreement is found at Exhibit L, pages 36-42.

Next, Payne argues that they are not sworn to nor certified. These documents are court records that were filed in criminal cases presided over by the undersigned. All of the documents are available to the public through the CM/ECF system. The plea agreements are each signed by several persons, and the judgments are signed and entered by the undersigned. The Court has compared the documents in Exhibit L with those filed in their respective cases in the CM/ECF system and finds that they are authentic. *See United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993) (holding that a document may be authenticated with circumstantial evidence, including the document's own distinctive characteristics). The Court further notes that, in each respective criminal case, the plea agreement and its basis was sworn to, in open Court, before the undersigned.

Payne next argues that Rhodes, Daniel Evans, Karl Stolze, Dedri Caldwell, William Priest, and Preston Wills's plea agreements are hearsay. As this Court has previously ruled, these pleas are public records that fall within the public records and reports exception. Fed. R. Evid. 803(8).

Payne next argues that Thompson's plea agreement is character evidence offered to show that he conspired to and did commit excessive force upon McBay. The Court did not rely on Thompson's plea agreement to prove that he used excessive force on McBay. To the extent the Court relied on Thompson's plea agreement as evidence he conspired between 2004 and 2006 to use excessive force upon inmates, that is not character evidence. He pled to the very conspiracy at issue in this case. His plea does not show he had a tendency to conspire from 2004 to 2006 because he had conspired at some time before 2004. The conspiracy is stated by him to have begun in 2004 and ended in 2006. That is the conspiracy upon which the Court relied.

-17-

Payne argues that Exhibit L is irrelevant as to whether he should have had constructive knowledge, because (1) the pleas are confined to the February 2006 beating death of detainee Jessie Lee Williams, (2) they are "vague and non-specific," and (3) Payne did not have actual knowledge. (Payne's 2d Mot. to Strike at 7). As revealed from the deposition testimony, the pleas, and the Court's prior ruling in *Alves v. Harrison County*, 1:06cv912-LG-RHW, the pleas were not confined to the Williams incident. The pleas describe conduct prior to the Williams incident. Specifically, the conduct occurred from 2004 until 2006. The Court does not find them vague and non-specific. Whether they are is a credibility question for the jury. Payne admits that his knowledge is in issue; thus, whether or not he had constructive knowledge is relevant to this case.

Payne argues the pleas and Judgments are untrustworthy because the pleas were negotiated and Thompson recanted portions of his plea in his deposition. Credibility is not for the Court to decide on summary judgment.

Finally, Payne argues that the evidence is prejudicial because it is an attempt to inflame the jury with evidence of the Williams incident. There is no jury, as this was evidence submitted on a motion for summary judgment. Further, the Court did not consider the Jessie Lee Williams incident.

IV.     EXHIBITS M AND N

Exhibit M is the February 2005 report from Steve Martin of the Department of Justice. Exhibit N is a July 2005 transmittal letter which purports to send the report to Sheriff Payne. Payne argues that both are inadmissible because they are not sworn nor authenticated. Payne admitted he received this report in his deposition. He referenced the report in his affidavit he

submitted on summary judgment.

Payne further objects to them because they reference the Court's 1995 Consent Judgment. The Court did not rely on them for the Consent Judgment, nor rely on the Consent Judgment itself, so this objection is moot. Further, Payne's affidavit that he submitted on summary judgment referred to the Consent Judgment in defense of Payne's actions, so this objection is also waived.

Finally, Payne objects to the report and letter as evidence of a subsequent remedial measure. A subsequent remedial measure has to be *subsequent* to the incident in issue. Fed. R. Evid. 407. "When, *after* an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of *subsequent* measures is not admissible to prove . . . culpable conduct. . . ." *Id.* (emphasis added). The report and letter came prior to McBay's incident. Further, they are not offered to prove that Payne is liable for violating the 1995 Consent Judgment, nor did the Court rely on them for that purpose. Moreover, a subsequent remedial measure can be used for "another purpose" such as notice. *Id.* The Court relied on these exhibits to show constructive notice.

Payne next argues that these letters are hearsay and "back door" expert opinions. The Court relied on these to show constructive notice, not the truth of the matter.

VI.    EXHIBITS S AND T

Exhibits S and T are the trial testimony of Timothy Moore and Priest in the excessive force criminal trial *United States v. Teel*, 1:06cr79-LG-JMR.

First, Payne argues that these testimonies are not sworn or authenticated. These exhibits show that the testimony was sworn, and the Court takes judicial notice of the fact that the

testimony was in fact sworn in open court before the undersigned during the *Teel* trial. Further, the Court has carefully compared these exhibits to the official trial transcript in *Teel* and finds that the exhibits are an exact copy of the relevant portions of that trial transcript. Therefore, the Court takes judicial notice of the fact that the testimony is authentic.

Payne next argues that the trial transcripts are hearsay. The testimony is admissible and can be submitted in opposition to a motion for summary judgment, although it is not submitted in a form that would be admissible at trial. *See Celotex*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *see also*, *Thomas v. Atoms Energy Corp.*, 223 Fed. Appx. 369, 373 (5th Cir. Mar. 21, 2007) (explaining that otherwise admissible evidence can be submitted in a form, such as an affidavit, that would not be admitted at trial). Further, Priest's trial testimony is a statement against interest. Fed. R. Evid. 804(3). That is to say it was a "statement which was at the time of its making so far contrary to the declarant's pecuniary . . . interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Id.*

Payne next argues this is character evidence because it is offered to prove that Thompson used excessive force upon McBay. The Court did not rely on the testimony about abuse of other inmates to prove that Thompson used excessive force upon McBay.

For the foregoing reasons, the Court denies Payne's Motion to Strike.

**IT IS THEREFORE ORDERED AND ADJUDGED**, that for the reasons stated above, Defendant Sheriff George Payne's Motion for Summary Judgment [300] should be and is hereby **GRANTED** as to the denial of medical care claim, the Section 1983 conspiracy to deny access to

courts claim, and the Section 1985 claims.  The Section 1985 claims are dismissed without

prejudice.  The remainder is **DENIED.**

   **IT IS FURTHER ORDERED AND ADJUDGED** that Payne's second Motion to Strike

[336] should be and is hereby **DENIED.**

   **SO ORDERED AND ADJUDGED** this the 14th day of April, 2010.


   *s/ Louis Guirola, Jr.*
   LOUIS GUIROLA, JR.
   UNITED STATES DISTRICT JUDGE